| iYELVERTON, Judge.
This is an appeal from a judgment terminating the parental rights of both parents, M.S.P. and M.W.P., over their children S.R.S. and J.P. The mother did not appeal. Only the father, M.W.P., appeals the termination of his parental rights.
The State of Louisiana through the Department of Social Services (DSS) first became involved in this case in 1993. At that time the children were living with their mother. The children were removed from the home of their mother due to her substance abuse problems and violent behavior. The children were adjudicated in need of care on October 14,1993.
|2The father was contacted in March 1994. When the children were removed from their mother’s home, the father was in prison serving a sentence for manslaughter. The father provided some relatives’ names for the DSS to consider for placing the children in those homes. However, after a study of those homes, they were rejected.
A petition to terminate the parental rights of both parents was filed on April 7, 1995. The trial court found that both parents were “unfit” as defined in La.Ch.Code art. 1015(4). The court found that there was “no possible way that the best interests of these children would be served by trying to reunite them with either parent.”
TERMINATION OF PARENTAL RIGHTS
M.W.P. claims that the DSS introduced no evidence other than his incarceration to prove that he was “unfit.” He claims that this was not a sufficient ground to terminate his parental rights. The various grounds for the involuntary termination of parental rights are listed in La.Ch.Code art. 1015.
At issue in the present case, La.Ch.Code art. 1015(4) provides the following grounds for termination:
(4) Prior adjudications as a child in need of care
(a) One year has elapsed since a child in need of care adjudication.
(b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of his reformation in the foreseeable future.
lain discussing the burden of proof in termination of parental rights cases, this court stated in State in Interest of Q.P., 94-609, p. 4 (La.App. 3 Cir. 11/2/94); 649 So.2d 512, 515:
Parental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law. State in the Interest of C.P., 463 So.2d 899 (La.App. 2 Cir.1985). On this basis, the Louisiana legislature imposed statutorily strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights. As explained in State in the Interest of J, 582 So.2d 269 (La.App. 1 Cir.), writ denied, 583 So.2d 1145 (La.1991), the evidentiary standard established in termination cases *1147 mandates that the State present proof by clear and convincing evidence of the parents’ failure to comply with all the enumerated conditions relied upon in the specific paragraph(s) of LSA-Ch.C. Art. 1015 before terminating parental rights. Accordingly, this heightened burden of proof requires the State to show not only that the existence of the fact sought to be established is more probable, but rather that the fact is highly probable or more certain. Hines v. Williams, 567 So.2d 1139 (La.App. 2 Cir.), writ denied, 571 So.2d 653 (La.1990). However, we are mindful that in assessing whether the clear and convincing evidentiary standard was followed in the lower court, we must determine whether the record reflects that the juvenile court manifestly erred. Rosell v. ESCO, 549 So.2d 840 (La.1989).
M.W.P. claims that the DSS has failed to prove that he was “unfit” or that it tried to reunite the children with him as mandated by Article 1015(4). We note that Article 1015(4) does not require that the DSS prove that it made efforts to reunite the children and the father. Therefore, we will address the evidence in the record as it relates to the father’s fitness to retain parental control.
14FITNESS AS A PARENT
La.Ch.Code art. 1003(10) describes the circumstances in which a parent is unfit to retain parental control as follows:
(10) ‘Unfit’ refers to any of the following behaviors or conditions of a parent:
(a) Who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or who has sexually abused, exploited, or overworked a child to such an extent that his or her health or moral or emotional well-being is endangered.
(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well-recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights.
(c)Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependancy makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
There have been no allegations of any type of abuse by the father against the children. However, he has a long history of criminal conduct. During the period between 1970 and his arrest for manslaughter in 1993, he was arrested 18 times: for theft, attempted simple rape, aggravated battery, credit card abuse, operating a vehicle while intoxicated, reckless operation of a vehicle, possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies, illegal use of a weapon, simple burglary, simple robbery, criminal mischief, simple battery, second-degree |5battery, simple criminal damage to property, aggravated battery, drunkenness in public, violation of a protective order, and resisting arrest. His criminal activity was continuous over a period of 20 years finally ending with a manslaughter conviction in 1993 for which he was sentenced to 15 years in prison. His anticipated release on “good time” parole is the year 2000. If M.W.P. serves his full sentence, his release will be in 2008. At the time of the hearing in this case, the children were 12 and 9 years old. The children could be majors when M.W.P. is finally released.
Also, and most importantly, his criminal activity exhibits a pattern of behavior that makes him unfit to provide for his children. He is incarcerated and unable to provide an adequate and permanent home for the children at the present time or in the near future.
The trial judge believed that based on the father’s testimony at the hearing that very day, he showed no significant substantial in *1148 dication of reformation: he was still not willing to accept responsibility for killing another human being. He admitted telling his son that it was not his fault, that the victim started it. Although he blames drugs for his long criminal history, he admitted in his testimony that he had not sought help because one has to “rehabilitate yourself.” Reformation requires a demonstrated change. State in the Interest of Broussard, 94-1613 (La.App. 3 Cir. 5/3/95); 657 So.2d 121. The trial court was correct in finding that the father was unfit to parent these children.
For the foregoing reasons the judgment of the trial court is affirmed. To the extent allowed by law, all costs are assessed to the State.
AFFIRMED.